Appeal of **WEBB & BOCORSELSKI, INC.**      Docket No. 178.

Upon discovery of the embezzlement of corporate funds by an officer, the owner of 50 per cent of the stock of a corporation paid to the secretary and treasurer who was the holder of the remaining 50 per cent of the stock, the sum of $6,000. Later, upon the discovery of a further embezzlement, the stockholder first referred to, and then owning 46 per cent of the stock, relinquished her rights to the earnings of the corporation to the extent of $5,000 in favor of the secretary and treasurer, who still retained his 50 per cent stock holdings. *Held*, that the payment of $6,000 and the release of rights to earnings of $5,000 constituted a reimbursement to the corporation.

Under the circumstances in this case, it is *held* that the salaries paid officers in 1919 and 1920 were reasonable.

Submitted January 26, 1925; decided March 24, 1925.

*W. D. Jamieson, Esq.*, for the taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

Before GRAUPNER, LITTLETON, and SMITH.

This appeal is from a deficiency of $17,250.49, income tax for the calendar years 1917 to 1921, inclusive. From the documentary and oral evidence introduced at the hearing the Board makes the following

FINDINGS OF FACT.

1. The taxpayer is a District of Columbia corporation, principally engaged in the reproduction of drawings on file in the United States Patent Office, and has its principal place of business in Washington, D. C.

2. Paul L. Webb and Herman Bocorselski, who organized the corporation, commenced business in partnership during the year 1908.

Webb was an experienced office man and salesman. Bocorselski was a lithographer and engraver. Their combined capital at the time they entered business for themselves was less than $2,000. In 1909 the partnership was incorporated with a capital stock of $5,000. Both men worked long hours and suffered considerable privation in establishing their business, and succeeded, through their application, industry, ability, and skill, in developing a profitable business.

3. At the time of incorporation, in February, 1909, 50 shares of capital stock, having a par value of $100 each, were issued as follows: 23 shares to Paul L. Webb, president of the company; 25 shares to Herman Bocorselski, secretary and treasurer of the company; and 2 shares to Mrs. Herman Bocorselski. In March, 1909, about seven weeks after the stock was originally issued, Webb transferred his 23 shares to Estella A. Webb, his wife. In July, 1911, Mrs. Bocorselski transferred the 2 shares held by her to Webb. The stock as thus distributed was held without further change until November 30, 1920, when Webb, by a memorandum agreement, transferred his 2 shares to Mrs. Webb in consideration of a bank deposit made by her to the credit of the corporation in the amount of $1,000.33, this representing the amount Webb had overdrawn the corporation's account. The transfer of these 2 shares was not recorded on either the stock certificate or on the books of the corporation, but is shown in a memorandum agreement given by Webb to Mrs. Webb. On April 22, 1921, pursuant to a demand by Bocorselski, and in accordance with an agreement hereinafter referred to, Webb by formal indorsement of the stock certificate transferred the 2 shares of stock to Mrs. Bocorselski, the certificate also being indorsed on the margin at that time by Mrs. Webb.

4. During the years 1919 to 1920, inclusive, and until his death in 1921, Webb collected a number of the corporation's outstanding accounts, making no record of such collections on the corporate books, and appropriated to his own use the amounts collected. In April, 1921, following the discovery of the embezzlement, a written agreement was entered into by Bocorselski as party of the first part and Mrs. Webb as party of the second part, the material provisions of which are as follows:

*This agreement witnesseth* that for and in consideration of the payment to her in hand of One Dollar ($1.00) by the party of the first part, the party of the second part does hereby agree to assign Two (2) shares of stock now held in the name of Paul L. Webb, to Mrs. Florence Bocorselski;

2. The party of the second part agrees to pay to the party of the first part the sum of Six Thousand Dollars ($6,000.) represented by the note of the said party of the second part payable to the said party of the first part on or before Sixty (60) days from the date hereof.

*And it is further mutually agreed* that the party of the first part in consideration of the payment of the said Six Thousand Dollars ($6,000.00) does hereby agree to release the said Paul L. Webb and Estella A. Webb from any and all claims or damages arising from certain shortages now existing or which may later be found existing in the accounts of the said Webb & Bocorselski, Incorporated. It being understood and agreed that the customers of the said Corporation shall be given credit for all payments which may have been made to the said Paul L. Webb on account of their indebtedness to the Corporation.

The party of the first part hereby agrees to continue to manage and operate the said Webb & Bocorselski, Incorporated, in the future as near as possible in accordance with the present plan of operation and to accept for his services as such manager and officer of the Corporation a salary of One Hundred and Twenty Five Dollars ($125.00) per week for a period of Two (2) years from

this date unless an additional salary is voted to him by the holders of not less than Seventy-five per cent (75%) of the stock of the Corporation.

*It is further understood and agreed* by and between the parties hereto that Paul L. Webb shall be paid a weekly salary of Thirty Dollars ($30.00) during his illness and in case of his death that the party of the second part shall be paid a salary of Thirty Dollars ($30.00) per week as long as the business of the Corporation is sufficient to meet salary demands; it being the purpose of this agreement to protect the said Corporation and the stockholders therein as well as the said Paul L. Webb in certain matters which have arisen in the Corporation.

At the time this agreement was made it was believed by Mrs. Webb and Bocorselski that the amount embezzled would not exceed $18,000. However, a subsequent investigation disclosed the amount to be $24,894.90. Upon the determination of this greater amount, Mrs. Webb assigned to Bocorselski her right to dividends on the shares of stock owned by her to the extent of $5,000. After a more careful audit and checking of accounts receivable, it was discovered that the embezzlements amounted to $5,375.96 for the year 1917, $6,598.08 for 1918, $7,087.36 for 1919, $3,210.48 for 1920, and $2,112.02 for 1921; a total of $24,383.90.

5. For the year 1919, Webb and Bocorselski each drew a salary of $15,500, and for 1920 each drew $18,525. For 1919 the corporation paid a 10 per cent dividend and for 1920 a 16 per cent dividend. In 1919 the gross sales of the taxpayer were $78,535.95 and its net income, before the deduction of salaries of officers and loss through embezzlement, was $43,406.93. In 1920, the gross sales were $82,109.07 and its net income, before the deduction of salaries of officers and loss through embezzlement, was $41,370.43. The Commissioner allowed salaries of $10,000 per annum, each, to Webb and Bocorselski for 1919 and 1920.

### DECISION.

The deficiency determined by the Commissioner is approved in part and disallowed in part. The amount of the deficiency will be finally settled on consent or on seven days' notice in accordance with Rule 50.

### OPINION.

GRAUPNER: This appeal presents two questions for determination:

1. Do the sums paid by a stockholder, who was the wife of the president of the corporation, constitute compensation to the taxpayer for corporation funds embezzled by the president?

2. Were the amounts paid as salaries to the president and the secretary-treasurer reasonable compensation within the meaning of section 234 (a) (1) of the Revenue Act of 1918?

There appears to be no controversy as to whether the amount embezzled was a deductible loss, if "not compensated for" within the meaning of the revenue acts in effect during this period. The language of section 12 of the Revenue Act of 1916 and section 234 of the Revenue Acts of 1918 and 1921, regarding the deduction from gross income of losses sustained, is substantially the same and no distinction need be made between these acts for the purposes of this appeal.

Counsel for both parties dwelt at some length upon the question whether, at the time the written agreement was made between Mrs.

Webb and Bocorselski, there were two or three stockholders. This contention appears to be immaterial but, as it was stressed by counsel, we feel it requires determination. Webb, by a memorandum dated November 30, 1920, duly signed and witnessed, transferred to Mrs. Webb the two shares held by him. No indorsement of this transfer was made on the certificate or on the corporate books. While the transfer did not make Mrs. Webb an owner of record of the two shares, it did vest title to them in her, and Webb was estopped from claiming any further title in the stock as against subsequent bona fide transferees. Furthermore, the transfer was recognized by Bocorselski. Thus, Mrs. Webb, who prior to this transaction had held 23 shares, became the holder of 25 of the 50 outstanding shares, the other 25 being held by Bocorselski. The stock was so held until and at the time the written agreement was made in April, 1921. Mrs. Webb then assigned two shares to Mrs. Bocorselski, who became the third stockholder. However, at the time of execution there were but two stockholders.

We now come to the question of determining whether the agreement by one stockholder to pay to another the sum of $6,000, when it was believed the embezzlement amounted to $18,000, and her subsequent assignment of her right to dividends to the same stockholder in the amount of $5,000 when it was estimated that the embezzlement amounted to $24,894.90, was a private agreement between two stockholders and, as such, without effect on the corporation, or whether these acts constituted a reimbursement to the corporation of a part of its funds which had been embezzled and an informal dividend to the stockholder who retained possession of the moneys paid.

That a corporation and its stockholders are separate identities and that stockholders of a corporation may contract privately with each other without contracting with the corporation are, of course, well-recognized rules of law, but there are qualifications of these general rules that must be considered. We must examine the facts and determine whether there is any reason why the rules should be qualified in the light of the peculiar facts in this appeal. By whom and to whom were the payments made? They were made by a holder of 50 per cent of the stock to the holder of the other 50 per cent of the stock. For what purpose was the payment of $6,000 made? The agreement in evidence throws light on this question by the following wording: " *  *  * Whereas certain conditions have arisen which make it necessary to make certain changes in the manner of conducting *said business*"; and " *  *  * it being the purpose of this agreement to protect the *said corporation* and the stockholders therein *  *  *." (Italics ours.) Clearly this instrument reflects something more than a mere private and personal agreement between stockholders, for there is an undisguised intent and desire to benefit the corporation. No formal document was executed to evidence Mrs. Webb's assignment of her rights to dividends on her stock to the amount of $5,000. This agreement was made upon the discovery that the amount of the embezzlement was greater than at first believed. From the evidence it is apparent that the assignment was made for the same purpose and with the same conditions as the payment of the $6,000.

Careful analysis of the facts convinces us that the two stockholders agreed between themselves to settle the affair of the embezzlement and the future of the taxpayer without formal corporate action. Bocorselski, the secretary and treasurer of the taxpayer, received $11,000 for the benefit of the corporation. The money properly belonged to the corporation; it was a partial reimbursement of embezzled funds. However, in order that the full amount of the embezzlement might not be exacted from her or her husband, Mrs. Webb, the only other stockholder, submitted to the moneys being retained by Bocorselski in his individual capacity. This was, in effect, an informal distribution or dividend from the assets of the taxpayer. It was also a surrender on the part of Mrs. Webb of her right to participate in the distribution of the assets. The two owners of all the stock being in accord, such an agreement would be effective as against all disinterested persons. However, the tax-collecting branch of the Government may inquire into the true purpose and result of the transaction to determine the tax liability of the taxpayer and the parties concerned. Such an examination may not alter the details of the transaction, but may consider the true effect for purposes of taxation.

As far as the taxpayer is concerned, we can not do otherwise than hold that the two payments, amounting to the sum of $11,000, were received for its benefit. This restitution, though not entered on its books, reduces the losses from embezzlement which are claimed as a deduction to $13,383.90.

The allotment of the sum of $1,000.33, which was deposited by Mrs. Webb to the corporate bank account to make up an overdraft by Mr. Webb, presents no difficult question. This was a transaction directly between Mrs. Webb and the corporation. Inasmuch as the amount overdrawn was not at any time treated as a part of the embezzled funds, we can disregard it entirely, save in so far as it relates to the transfer of the two shares of stock by Mr. Webb to Mrs. Webb.

We must now consider the salaries of $15,500 and $18,525, paid in 1919 and 1920, respectively, to each Webb and Bocorselski. We believe that these two men were the best judges as to their earning power and the amount the business could pay them. We can not overlook the fact that this was a very close corporation, developed solely through the efforts, privation, and ability of these two men from an initial investment in a partnership of less than $2,000 to a business having in 1919 gross income of $78,535.95 and a net income, before the deduction of salaries of officers and loss through embezzlement, of $43,406.93. In 1920, the gross income amounted to $82,109.07 and the net income, before the deduction of salaries of officers and loss through embezzlement, to $41,370.43. Nor can we ignore the fact that the personal services rendered by the two men were the principal elements in the development of the business to a successful point. The contention of the Commissioner is that, if the salaries claimed for 1919 and 1920 are to be allowed as reasonable compensation, similar salaries should be allowed for the earlier years when the labors of those men were fully as strenuous as in 1919 and 1920, but, as the salaries were small, this contention does not seem reasonable. In its early years the corporation could not pay large salaries and the two men took as salaries only sufficient to meet their bare

personal necessities. We must recognize the fact that this business was one peculiar to itself, the testimony showing that at one time this corporation did at least 80 per cent of the business of reproducing drawings from the Patent Office, and that these two men, Webb and Bocorselski, were specialists in this line of work. From the record in the appeal we hold that the salaries paid Webb and Bocorselski in 1919 and 1920 were reasonable and are proper deductions from gross income.